IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ROBYN A. KETCHER,           )
                            )
         Plaintiff,         )
                            )
v.                          )    Case No. CIV-10-157-KEW
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security Administration,    )
                            )
         Defendant.         )

## OPINION AND ORDER

Plaintiff Robyn A. Ketcher (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 13, 1978 and was 31 years old at the time of the ALJ's latest decision. Claimant completed her high school education and her training as a licensed practical nurse. Claimant worked in the past as a waitress, cashier/checker, and a

3

licensed practical nurse. Claimant alleges an inability to work beginning February 1, 2008, due to seizures, depression, and allied disorders.

**Procedural History**

On March 14, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 20, 2009, an administrative hearing was held before ALJ David W. Engel in Tahlequah, Oklahoma. On October 26, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On March 12, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") sufficient to perform a full range of light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to: (1) properly consider or provide the appropriate weight to the opinion testimony of Claimant's treating physician; and (2) properly consider the state agency physician's opinion regarding the limitations on Claimant's mental functioning.

## Treating Physician's Opinion

Claimant contends the ALJ erroneously rejected the opinion of Claimant's treating physician, Dr. Jeffrey L. Jenkins. On May 13, 2007, Claimant was treated in the emergency room after suffering seizures. She was attended by Dr. Jenkins. Claimant presented with an inability to speak, left sided hemiparesis with inability to plantar flex and dorsal flex the foot, inability to flex the wrist in any direction. She was extremely weak on the left side. Dr. Jenkins diagnosed Claimant with prolonged tonic clonic seizure, simple complex and complex tonic clonic seizure that resulted in a post-ictal stroke type syndrom called Todd's Syndrome, also known as Alice in Wonderland Syndrome. (Tr. 275-77).

On June 7, 2007, Claimant was treated by Dr. Jenkins for ventricular arrhythmia. Claimant was found to have critically low potassium levels. She suffered from light-headedness and heart palpitations at work. (Tr. 311-12).

On August 7, 2007, Claimant reported to Dr. Jenkins that she had suffered partial seizures where she would look off to one side, jabber nonsensically, and then come back to reality. She was also suffering from memory problems. Dr. Jenkins increased her dosage of Topamax to control the seizures. (Tr. 428).

In November of 2007, Claimant was hospitalized after suffering three "hard" seizures in a 12 hour period. Claimant had not had a seizure for four months prior to this episode. (Tr. 306).

On April 17, 2008, Claimant was attended by Dr. William Knubley. Claimant suffered from kidney stones, possibly caused by the medication she took for seizures. Claimant reported she had suffered seizures in November and December. On May 13, 2008, Claimant again saw Dr. Knubley, complaining of migraine headaches and "spells" involving light-headedness, dizziness, and she "blacked out." (Tr. 498-99).

On May 28, 2008, Dr. Diane Brandmiller completed a Mental Status Examination on Claimant. Dr. Brandmiller diagnosed Claimant at Axis I: Major Depressive Disorder, Single Episode, Mild; Axis II: No Diagnosis; Axis III: Seizures (nocturnal and partial), kidney stones, migraine headaches, hypertension; Axis IV: Unemployment; Axis V: GAF of 64. Dr. Brandmiller found Claimant's short term memory, long term memory, concentration, and abstracted thinking appeared intact. She would be able to understand and

carry out simple instructions. She may be able to understand and carry out complex instructions if they were written down. She has difficulty if explanations are given verbally to her. Claimant has difficulty adapting to change. (Tr. 462-65).

On June 16, 2008, Dr. Tom Shadid completed a Mental Residual Functional Capacity Assessment form on Claimant. Dr. Shadid found Claimant was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 467). He explained that due to Claimant's suicidal ideation, frequency of crying, frequency of nightmares, worries about what is going to happen to her daughter, periods of anger with episodes of screaming and yelling, "it is considered that the clmt would not be able to complete a normal workday or workweek without interruption from psycy-based sxs. THIS IS A HIGHLY RESTRICTIVE MRFC. The clmt's allegations and presentation of sxs are considered credibe (sic)." (Tr. 468).

Claimant continued to seek treatment for seizures and headaches through July of 2008. She reported to Dr. Knubley that she still suffered from break through seizures despite treatment with medication. (Tr. 490-91).

On August 18, 2008, Claimant reported to Dr. Knubley that she

had suffered a partial seizure during the last month. She complained of memory problems, mood problems, and continued headaches. (Tr. 519).

On October 13, 2008, Claimant saw Dr. Knubley complaining that she had suffered a seizure and bruised her arm. She reported having suffered four generalized seizures and possibly three partial seizures during the last few months. She also reported having panic attacks and increased migraine headaches. Dr. Knubley diagnosed Claimant with progressive migraine headache disorder, increased depression, panic attacks, anxiety disorder, and increased seizures. He questioned whether the seizures were epileptic or non-epileptic in origin. (Tr. 675-76).

On October 16, 2008, Dr. Jenkins saw Claimant. She complained of more seizures and bad headaches for two days. Dr. Jenkins reported Claimant was crying hysterically. Dr. Jenkins diagnosed Claimant with mood disorder and treated her with Prozac. (Tr. 630).

On November 4, 2008, Dr. Jenkins completed a questionnaire on Claimant's limitations. He determined that Claimant suffered from pain and a medical basis existed for the pain. Dr. Jenkins stated that "recurrent migraine headaches interfered with [Claimant's] ability to do her job as an LPN and precipitated her seizures frequently and gave her confusion and disorientation frequently."

8

(Tr. 554). As for the mental effects of Claimant's pain, Dr. Jenkins opined that Claimant's concentration and attention would be severely affected such that it "[p]recludes the attention and concentration required for even simple, unskilled work tasks." Dr. Jenkins added that Claimant "would be so distracted and impaired by headaches she could not stand the normal noise of a clinic, would get distracted with needles in their arms when pulling blood." (Tr. 555).

Dr. Jenkins also completed a form on Affective Disorders under listing § 12.04. He found Claimant suffered from a disturbance of mood accompanied by a full or partial manic or depressive syndrome. In so finding, Dr. Jenkins found the presence of pervasive loss of interest in almost all activities, appetite disturbance, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, hallucinations, delusions or paranoid thinking. Dr. Jenkins found the presence of manic syndrome characterized by hyperactivity, pressures of speech, flight of ideas, and easy distractibility. He also determined Claimant had symptoms of bipolar syndrome. (Tr. 556).

Dr. Jenkins found extreme restrictions of activities of daily living and deficiencies of concentration, persistence or pace. He found marked limitations in difficulties maintaining social

9

functioning. Dr. Jenkins determined Claimant had four or more repeated episodes of decompensation. (Tr. 557). He found Claimant "can no longer drive, any stress can precipitate a seizure. She is progressively confused, inappropriate sexually and fluctuates between hypomania and depression." (Tr. 558).

Dr. Jenkins completed a Mental Residual Functional Capacity form on Claimant. He found Claimant was markedly limited in the areas of the ability to remember locations and work-like procedures, the ability to understand and remember very short and simple instructions, ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to interact appropriately with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and ability to respond appropriately to changes in the work setting.

Dr. Jenkins found Claimant was moderately limited in the areas

10

of the ability to carry out very short and simple instructions, ability to sustain an ordinary routine without special supervision, ability to make simple work-related decision, ability to ask simple questions or request assistance, ability to be aware of normal hazards and take appropriate precautions, and ability to travel in unfamiliar places or use public transportation. (Tr. 559-60).

On December 3, 2008, Claimant reported to Dr. Knubley that she had suffered three more seizures during the month. She was "just not feeling good." (Tr. 673-74).

On December 8, 2008, Claimant sought treatment for depression and anxiety at the Wilma P. Mankiller Health Center. She stated she was suffering some problems with suicidal thoughts without a plan. She was frequently awakened at night and all she wanted to do was stay in bed. She was noted to be tearful with a sad affect and mood. (Tr. 660-61).

On December 11, 2008, Claimant saw Dr. Jenkins complaining of a bad headache the night before. Dr. Jenkins found Claimant had "real impulse control issues." Claimant reported having two seizures over the last week. Dr. Jenkins diagnosed Claimant with organic brain syndrome, epilepsy, recurrent major depression, and hysteronic personality disorder traits. (Tr. 667-68).

On February 9, 2009, Claimant reported to Dr. Knubley that she had suffered two partial seizures and one generalized seizure since

11

December. She continued suffering from headaches. (Tr. 672).

On February 20, 2009, Claimant reported to counselor Larry Myers that she suffered a seizure the day before. He assessed Claimant's GAF at 47. (Tr. 656-57).

On February 25, 2009, Claimant was brought to the emergency room by her husband after she had fallen in the yard during a seizure. Claimant was "slow coming around". Dr. Jenkins found her lethargic. He concluded that seizures and falling from them had become a real issue for Claimant. (Tr. 663-64).

On April 2, 2009, Dr. Jenkins found Claimant's affect to be flat and her to be depressed. (Tr. 665).

On April 13, 2009, Dr. Knubley reported Claimant had suffered four seizures in the last few months. She had presumably suffered a partial seizure in his waiting room. She was found to be dazed, confused, and tired. He diagnosed Claimant with continued seizures with poor control, migraine headaches, and depression. (Tr. 670-71).

On April 14, 2009, Claimant saw Mr. Myers for her depression. She reported screaming at other people, talking to herself and staying in bed, and having minor suicidal thoughts. He noted Claimant had a dysphoric mood and fair eye contact. He diagnosed Claimant with major depressive disorder, recurrent, severe without psychotic features. He found her GAF to be 44. (Tr. 681-82).

On April 30, 2009, Dr. Denise LaGrand completed a Psychological Assessment on Claimant. Claimant told Dr. LaGrand she had been suffering from depression, anxiety, panic attacks, memory loss, poor concentration, and had poor anger management with overall feelings of gloom and worthlessness. Dr. LaGrand noted Claimant's affect was depressed and Claimant was anxious. Claimant's overall cognitive functioning was in the low average range. Dr. LaGrand diagnosed Claimant at Axis I: Major Depressive Disorder, moderate, Generalized Anxiety Disorder; Axis II: No Diagnosis; Axis V: GAF of 50. (Tr. 683-89).

From May to July of 2009, Claimant continued to seek counseling from Mr. Myers for depression. Her GAF remained in the 49-50 range during this period. (Tr. 677-78, 697-702).

In his decision, the ALJ found Claimant suffered from the severe impairments of seizures, depression, and allied disorders. (Tr. 14). The ALJ determined Claimant retained the RFC to perform a full range of light and sedentary work except Claimant would be unable to climb ropes, ladders, and scaffolds, is unable to work in environments where she would be exposed to unprotected heights and dangerous moving machinery parts. He found Claimant was able to understand, remember, and carry out simple to moderately detailed instructions in a work-related setting, and is able to interact with coworkers and supervisors under routine supervision. (Tr.

13

16).

With regard to Dr. Jenkins' opinions on marked limitations in several essential work related areas, the ALJ determined these opinions were due "little weight" because "the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." The ALJ then questioned Claimant's credibility and concluded that "[t]he course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported." (Tr. 24).

In evaluating the opinions of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still

14

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's rejection of Dr. Jenkins' opinions appears to be

15

largely subjective as to what the treating physician accepted "uncritically" from Claimant's statements. The medical record is replete with diagnosis and treatment information concerning Claimant's medical conditions, in particular her continued seizures and headaches with poor control. These medical findings are not limited to those made by Dr. Jenkins but also by Dr. Knubley. The ALJ's perception of the basis for Dr. Jenkins' opinions on limitation as well as his conclusion that the treatment provided was not consistent with these limitations is unfounded. The only course of treatment found available by all of Claimant's treating physicians was continued modification in type and dosage of medication. These medications often lead to unacceptable side affects including kidney stones which precipitated their discontinuance. On remand, the ALJ shall re-examine the weight given to Dr. Jenkins' opinions in light of the entirety of the medical record and reformulate his decision accordingly. In the process, if the ALJ needs to recontact Dr. Jenkins to clarify the basis for his opinions, he shall do so.

### Mental Functioning Limitations

Claimant also contends the ALJ failed to properly consider the opinion of Dr. Shadid as to Claimant's mental limitations. Quite simply, the ALJ never mentioned Dr. Shadid's opinion or mental RFC

16

assessment. An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. But it is clear that, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996)(citations omitted). On remand, the ALJ shall discuss this evidence, despite the fact it does not support a finding of non-disability.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 30th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE